BROCKENBROUGH, J.
delivered the opinion of the Court.
The petitioner was indicted of the murder of William Anderson, by shooting him with a gun. The Jury convicted him of murder in the first dergee, and he was sentenced to be hanged. During the trial, the Jury having retired to consult of their •verdict, were for some time unable to agree, and came into Court to ask of the Judge to instruct them. He did accordingly instruct them, and the prisoner by his Counsel excepted to the Court’s opinion, and it is that opinion which is now to be reviewed. He said to them, “that to constitute murder in the first degree with reference to this case, there must be a premeditated, or previously formed design to kill, but it is not necessary that this premeditated design to kill should have existed for any particular length of time. It is only necessary that it should be a course determinatelj' fixed on, before the act done, and not brought about by provocation at the time of the act, or so recently before, as not to give time for reflection : neither is it necessary to prove this formed design by positive evidence: like every other fact, it may be established by circumstantial evidence, which, beyond rational doubt, convinces the minds of the Jury that this previous determination to kill did in fact exist. If the prisoner, as he approached the deceased, and when he first came in view of him, at the distance of about fifty yards, then formed the design, and came to the determination to kill the deceased, and in pursuance *of this, design, walked in a quick pace, the said distance of fifty yards, and killed the deceased, without any provocation then received, it was murder in the first degree.”
Murder is defined to be the killing any reasonable creature in being, “with malice aforethought, expressed, or implied;” and there cannot be any doubt, that at Common Eaw, if one man kills another without a previously formed design to kill, that it is murder, although the design may have been formed only the moment before the fatal act is committed: and if there be no provocation whatever given at the time of the act, or if the provocation be very slight, and the act be committed with such weapon as is calculated to produce, death, or if there have been a provocation, so long before the act, as that the blood has had time to cool, and the mind to reflect, and the deadly purpose is then effected, it is. murder. But, it is urged by the Counsel for the prisoner, that such a killing is not murder in the first degree: that the Legislature have enumerated particular cases which constitute murder in the first degrees thus, that murder perpetrated by means of poison, by lying in wait, or by duress of imprisonment,'or confinement, or by starving, or by wilful, malicious and excessive whipping, beating, or other cruel treatment, or torture, is murder in the first degree; that a general provision is then made, that murder, by any other kind of wilful, deliberate, and premeditated killing, shall be murder in the first degree; 1st Rev. Code, p. 616; and it is argued, that the word “such” ought to be interpolated, so as to make it “any other such kind of wilful, deliberate, and premeditated killing;” and that without such interpolation, the previous particular enumeration was unnecessary.
We do not see the propriety of tnat interpolation. We do not think that the intention of the Legislature, or the interest of society, requires that the Judiciary should interpose a word which the Legislature have not thought proper to use. They have enumerated some of the most ^striking instances of deliberate, cruel, and premeditated homicide; but, finding that a particular enumeration of all the instances which may happen in' the ever-varying circumstances in which men are placed, would be impracticable, they have by general words declared, that all kinds of wilful, deliberate, and premeditated killing shall be murder in the first degree. The enquiry, then, always must be, is the killing wilful, deliberate, and determined on before the act. If it is, it proves that degree of malice which places, the act in the highest grade of the offence. If a man wilfully and deliberately points a pistol, or a gun, which he knows to be loaded with powder and ball, at another’s, head, or heart, fires it, and kills' him, not having received any provocation from him, surely there is as much malignity in his-, heart, there is as little excuse for him, and there is evidence as wilful, deliberate, and premeditated a purpose to kill, as if he had *887 ■waylaid him, or had imprisoned him, or starved him, without intending to kill. So, if there had been a previous provocation, but sufficient time had passed off to allow his blood to cool, and his reason to resume its influence, then the deliberate act of shooting down his adversary, with the determined purpose to kill him, is murder from malice aforethought. Every act of murder, which the Jury are satisfied is of the character mentioned in the general clause, must be murder in the first degree, although the preparation for the fatal act may not have been so long present to the mind, nor the means of producing death so long protracted, as in the enumerated cases.
There are many instances in which the act would not be considered so wilful, deliberate and premeditated, as to make it murder in the first degree; yet, it would be murder at Common Law, and, therefore, by the Statute, would be considered as murder in the second degree. If a workman throws a stone, or a piece of timber from a house, in a populous city, into the street, where he knows people are passing, and gives them no warning, and kills a man, it is *murder; yet, if it is from criminal carelessness instead of a wilful design to kill, or do great bodily harm, it is murder in the second degree: so if a person shoots at a fowl with the felonious intent of stealing it, and kills a person, he is guilty of murder, but it wants the ingredient of a wilful killing, and, therefore, is only in the second degree. But, these are acts very different from those which the instruction supposes.
The latter part of the instruct.on seems to have been intended to apply to the very case then before the Court. It may be supposed that when the Judge said, that if the prisoner, when he first saw the deceased at a short distance, Ihen formed the design of killing him, and in pursuance of that design, stepped up to him, and shot him, “without any provocation then received,” that he was guiltj' of murder in the first degree; that he did not, in his instruction, provide for the case of a provocation recently before that time received; so recently as that there was no time for reflection, nor for the blood to cool. If this part of the instruction stood alone, we should question its correctness; but, it would not be treating the Court fairly to separate it from its context. It must be taken in connection with the first part of the instruction. The Judge had almost in the same breath explained the effect of a recent provocation, and the latter part is explained by the former part of the instruction. We see no error in the opinion given.
The other error suggested in this Record, to wit, that the Judgment was ren dered after the Term of the Court had been legally ended, has been fully considered, and just decided in Mendum’s Case, and the reasoning of the Court need not be now repeated. The Court is unanimously of opinion, that there was no error in the instruction given; and a larg'e majority is of opinion, that the second error assigned is not tenable. The Writ of Error is, therefore, refused.